IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 14, 2009

## DARRELL WALLS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08000     Chris Craft, Judge**

_____

**No. W2008-01947-CCA-R3-PC  - Filed November 5, 2009**

_____

The petitioner, Darrell Walls, appeals the denial of his petition for post-conviction relief and argues that counsel was ineffective for failing to adequately investigate his case. The petitioner entered a best interest plea to voluntary manslaughter, a Class C felony, and aggravated assault, a Class C felony. He was sentenced as a Range II, multiple offender to eight years in confinement. After careful review, we affirm the denial of post-conviction relief by the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Darrell Walls.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The State offered the following statement of proof regarding the underlying events:

If this matter had gone to trial, the State would have shown that on June 22nd of 2003, at Douglas Park in North Memphis, there was a picnic that a crowd of people were getting out of.

At some point later that evening, everybody converged at an intersection nearby, Sunset and Chelsea, in Shelby County, and there was a girl fight between opposing gang rivalries.

During the fight, there were words yelled and the defendant fired some shots into the crowd and struck Travis Boyd in the shoulder. He was injured. And he also struck Brandon Bates who later died at the Med.

In the alternative, the State would have shown that the defendant fired, among others, and under the theory of criminal responsibility was responsible for the homicide and the striking of Travis Boyd in the shoulder.

This is a settlement on a lesser charge, but out of range, based on some issues of self-defense or in the alternative, defense of others.

The defendant claims in his admission to the police that he did, in fact, fire at the crowd, but it was out of defense to third people.

There are also issues of the defendant not being the one who fired the shots, but as I stated before, there would have been a theory of criminal responsibility. So there were definitely risks in this case.

Defense counsel stated that the petitioner was entering a best interest plea and offered the following statement of proof:

Our defense would have been, at trial, that he did not shoot the gun. Obviously, inherent in that is a guilt conflict and inconsistencies that certainly could have [led] to my client being convicted as charged, and a very strong possibility of that. Several witnesses said that my client did the shooting and he himself told the police that.

My client would like to stipulate under [*North Carolina v.*] *Alford* [400 U.S. 25 (1970)], and he's entering this plea because [it's] in his best interests to do so rather than risk a possible twenty-three, twenty-four or even twenty-five year sentence. . . .

He does have well over two years of jail credit toward[] this. He's able to meet the parole board rather shortly and would be sent to the penal farm for processing and would stay at the penal farm undoubtedly until he is released. And we would ask the Court to accept the negotiated plea.

The petitioner testified that counsel had explained the nature of the plea to him and that he was entering this plea because it was in his best interest. He testified that he read and understood his plea agreement. He stated that he understood his rights and acknowledged that, by pleading guilty, he was giving up those rights and that he was pleading guilty freely and voluntarily.

Post-conviction Hearing

The petitioner testified that counsel visited him in jail "from time to time." He claimed that he was not involved in the shooting and that he ran to his girlfriend's house when the shooting started. He recalled that counsel got frustrated with him for saying he did not commit the crimes.

He discussed his statements to police with counsel and claimed that he never confessed to shooting anyone. He testified that if his statement had been suppressed, he would have testified at trial that he ran to his girlfriend's house when the shooting began. He said that he pled guilty because counsel told him he would lose at trial.

The petitioner claimed that counsel did not interview three proposed witnesses who were present during the shooting. He opined that these witnesses could have testified that he was not involved in the shooting. Initially, he claimed that he told counsel about the witnesses when he was indicted in November 2003. He later acknowledged that counsel was not appointed to represent him until December. He maintained, however, that he told "somebody" about the witnesses when he was indicted. He testified that the witnesses told him that they were never contacted by counsel. He also said that he told counsel his brother was in the courtroom if he wanted to call him to testify on the day of the guilty plea hearing.

The petitioner testified that on the day his case was set for trial, counsel approached him with a plea offer. He said he initially rejected the offer, but counsel told him it was in his best interest to plead guilty because he would lose at trial and face a sentence of twenty-five years or more. He recalled that counsel told him to accept the offer because it was the best one he was going to get. He said he wanted to go to trial but not with an attorney who thought he was going to lose. He acknowledged that he told the court he understood his plea and wanted to plead guilty. He claimed that he lied because he was afraid to have counsel represent him at trial.

Counsel testified that he began representing the petitioner on December 4, 2003. He recalled that the case was continued six or seven times over the course of two years. He said that he met with the petitioner at the jail and also each time they went to court. During those meetings, they discussed the case and potential defenses. Counsel explained that he was prepared to go to trial in this case. The petitioner told counsel that someone in the crowd of people pulled a gun on him. The petitioner also said that he did not have a gun and did not shoot anyone.

Counsel testified that the petitioner gave a statement to police in which he denied any involvement in the shooting. Later, he gave a statement in which he admitted shooting five times with a .38 caliber weapon, and he acknowledged shooting a man in a yellow shirt. Counsel filed a motion to suppress the statement after he explained to the petitioner that it was extremely damaging to his case. Counsel was of the opinion that the potential testimony of several witnesses who were with the petitioner after the shooting was also very damaging.

Counsel received the discovery materials from the State and asked his investigator to talk to as many of the State's witnesses as possible. After reviewing the discovery, he determined that

several of the State's witnesses said the petitioner had a gun or actually did the shooting. However, many of the witnesses had conflicting statements. He attempted to contact the witnesses proposed by the petitioner.

Based on his review of the evidence, counsel determined that it was in the petitioner's best interest to plead guilty. He said that he did not threaten the petitioner but did review all the possible scenarios with him that might result from a trial. He told the petitioner that he would do the best he could at trial if the petitioner wanted a trial. However, counsel did not think the petitioner would be acquitted of both offenses at trial.

The police officer who interviewed the petitioner following the shootings testified that the petitioner confessed during his second interview. He said that he also took statements from other witnesses who positively identified the petitioner as the shooter.

Analysis

On appeal, the petitioner argues that the post-conviction court erred in denying him relief based on ineffective assistance of counsel. Specifically, he argues that counsel was ineffective for failing to adequately investigate his case. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and that, but for counsel's errors, the petitioner would not have pled guilty but would have, instead, insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle the petitioner to relief. T.C.A. § 40-30-110(f) (2006). This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).

Here, the petitioner argues that counsel was deficient for failing to interview potential witnesses in preparation for trial. The petitioner specifically alleged that three witnesses could have testified that he was not responsible for the shootings. Counsel testified that he attempted to contact all three witnesses suggested by the petitioner but could not specifically recall if he talked to each of them. However, the petitioner did not call these three witnesses to testify during the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

The petitioner asks this court to disregard the precedent set in *Black* and find that counsel was ineffective for failing to call the three witnesses. Instead, we take this opportunity to reaffirm our belief in the reasoned and logical statement of law contained in *Black*, that being that a petitioner who contests the failure to call a witness as ineffective should call the proposed witness in order to demonstrate deficiency or prejudice. Because the petitioner failed to call the witnesses during the post-conviction hearing, neither this court nor the post-conviction court can determine whether he demonstrated deficiency or prejudice. Therefore, the petitioner is not entitled to relief on this issue, and we affirm the judgment from the post-conviction court.

Conclusion

Based on the foregoing and the record as a whole, we affirm the denial of relief from the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE